IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAULA DRAYTON,                    )
                                  )
            Plaintiff,            )
                                  )
     v.                           )      CIVIL ACTION NO. 1:03cv963-SRW
                                  )               (WO)
JO ANNE B. BARNHART, Commissioner )
of Social Security,               )
                                  )
            Defendant.            )

## MEMORANDUM OF OPINION

Paula Drayton brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a decision by the Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits and Supplemental Security Income under the

Social Security Act.  The parties have consented to entry of final judgment by the Magistrate

Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by

the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

On November 26, 2001 (protective filing date), plaintiff filed an application for

disability insurance benefits and Supplemental Security Income, alleging disability

commencing on August 11, 2000.[1]  On March 13, 2003, after the claim was denied at the

---

[1]  Plaintiff's previous applications, filed on July 31, 1995, August 28, 2000, July 6, 2001 and July 9, 2001 were denied initially and were not further appealed.  The latest of these previous applications was denied on August 29, 2001. (R. 472).  Plaintiff does not argue that the ALJ reopened these previous applications.

initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered a decision on May 14, 2003, in which he found that plaintiff suffers from the severe impairments of carpal tunnel syndrome, hypertension, and depression (bipolar), but that she retains the residual functional capacity to perform her past relevant work as a nurse's aide and private aide.  On July 25, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ's finding that plaintiff retains the residual functional capacity to perform her past relevant work is not supported by substantial evidence; (2) the ALJ failed to properly evaluate uncontroverted medical evidence and opinions of medical sources; and (3) the Appeals Council erred by failing to remand this case for consideration of new evidence.

In the present application for benefits, plaintiff alleges that she is unable to work because of her "hands, wr[]ist, High blood pressure, [and] Depression." (R. 138; see also R. 151, alleging disability due to tendonitis in both wrists, high blood pressure and depression). Plaintiff  states that her impairments limit her ability to work because "I can't pick heavy thing with my hands they hurt and swells on me all the time and I stay depress all the time." (Id.).

At the hearing before the ALJ, plaintiff testified that she received a certification as a nurse's aid after attending Riley College for six months, and that she worked as a nurse's aid for a "private sick lady" for about six months ending in May 2001. (R. 30; see also R. 201). In this position, plaintiff was required to take the patient's vital signs, turn her in the bed, and help her to the bathroom. (R. 39).   Plaintiff was then using cocaine, but has not used drugs since June 2001.  She goes to AA meetings three times a week and goes to group meetings at SpectraCare every one or two weeks.  (R. 31). She lives in an apartment with her eighteen year old son.  She testified that she has not tried to find work since her private sitting job because of problems with her hands.  She had surgery on her left elbow in July 2002, but the surgery did not help.  She still has problems with her hands, her elbows and her wrist.  She

3

testified at the hearing that her doctor gave her medication for pain and was referring her to a nerve doctor for further treatment.  (R. 32-34).  In her job at Collins Signs, she used a hammer that weighed five to ten pounds and, after 15 to 20 minutes of using the hammer, her hands swelled and she had sharp pains in her hand up to her shoulder.  (R. 43-44).  Plaintiff stated that she cannot grip.  (R. 45).  Her right hand hurts sometimes when she drives, and she cannot lift grocery bags.  (R. 46).

Plaintiff testified that she takes three different kinds of medicine for high blood pressure.  (R. 35).  Plaintiff stated that her high blood pressure causes her feet to swell after she stands for about two hours, and that the swelling also occurs after the same period of time when she is sitting.  She has to elevate her feet for about an hour before she can resume either sitting or standing.  (R. 40-41).

Plaintiff testified that she has problems with depression – she cannot be in crowds and mostly stays at home.  She doesn't like to be around a lot of people.  She is taking medication, which helps but does not stop her from hearing voices.  She cannot sleep at night. (R. 35).  Her depression medicine makes her go to sleep during the daytime.  (R. 48).  Plaintiff testified that she drives and visits her mother, who lives one street away,  "every now and then."  (R. 37).  She testified that she watches television, cooks "every now and then," goes out to eat "sometimes" and does laundry "a little bit."  She sometimes goes to the grocery store, but does not read or go to the movies.  She does "nothing" during the day, but "might look at television."  (R. 38-39).

Plaintiff contends that the ALJ's determination that the plaintiff retains the residual

4

functional capacity to perform her past relevant work is not supported by substantial evidence.  Plaintiff argues that the ALJ's hypothetical question to the vocational expert was insufficient to support the ALJ's determination because: (1) the question failed to assume the existence of functional limitations associated with bilateral carpal tunnel syndrome, a condition the ALJ found to be severe; (2) the mental limitations posed by the ALJ are not supported by the reviewing, examining, or treating physicians; (3) the question failed to adequately take into account exertional limitations caused by plaintiff's high blood pressure; (4) the ALJ failed to properly evaluate the uncontroverted medical evidence and opinions of the non-examining medical advisors, consulting physicians and treating physicians evidencing several other physical and mental impairments; and (5) the ALJ failed to consider the frequency of plaintiff's mental health treatment.

    <u>Functional limitations associated with carpal tunnel syndrome</u>.  The ALJ found that plaintiff has the severe impairment of carpal tunnel syndrome.  (R. 17).  His determination of plaintiff's residual functional capacity included the limitation that plaintiff "must avoid frequent repetitive manipulation with the upper extremities and avoid frequent overhead reaching."  (R. 20).   Plaintiff argues that the ALJ should have included more specific limitations, such as limited wrist flexion, fine finger manipulation and grip. (Plaintiff's brief, pp. 8-9).  In a March 26, 2003 response to an inquiry from plaintiff's attorney regarding her limitations, Dr. Chitwood, plaintiff's treating orthopedic doctor, noted that plaintiff was having numbness in her small and ring finger and symptoms of carpal tunnel syndrome.  He stated:

> As far as any limitation goes, the only thing this would limit her in is any strong grip activities but she would otherwise be able to function normally and be able to seek gainful employment that did not require strong grip or pinch motions with her left hand.

(R. 465). The court concludes that the RFC determined by the ALJ – which recognizes a limitation in repetitive manipulation with the upper extremities – includes consideration of the limitations imposed by plaintiff's carpal tunnel syndrome.

<u>Mental limitations</u>. In his hypothetical question to the vocational expert, the ALJ included the "ability to understand, remember and follow simple, one, two, three step instructions, complete repetitive tasks," "limited to occasional contact with the general public" and "would require work with minimal changes in work setting and routines." (R. 51). Plaintiff suggests that these mental limitations are "not supported by the reviewing, examining, or treating physician." The only physician who set forth specific mental functional limitations was the agency medical consultant, Ellen Eno. The plaintiff points to Dr. Eno's conclusions that plaintiff's interaction with the general public should be "minimal" or "infrequent," that changes in her work setting should be minimal, and that she would "need assistance with plans and goals that go beyond the simple repetitive ones." (Plaintiff's brief, p. 9; R. 344, 363). Plaintiff argues that these mental limitations are inconsistent with her performance of the semiskilled job of nurse's aide. However, the court concludes that the limitations stated by the ALJ in his hypothetical question to the VE incorporate the limitations noted by Dr. Eno. To the extent plaintiff's disagreement is with the conclusion that someone with such mental limitations can perform a semiskilled nurse's aide job, she

6

is merely contesting the testimony of the vocational expert to the contrary.  (R. 50-52).  The

ALJ was entitled to rely on that testimony.  See Barron v. Sullivan, 924 F.2d 227, 229-30

(11th Cir. 1991)("Substantial evidence may even exist contrary to the findings of the ALJ,

and we may have taken a different view of it as a factfinder.  Yet, if there is substantially

supportive evidence, the findings cannot be overturned.").

   High Blood Pressure.  The ALJ determined that plaintiff has the severe impairment

of hypertension.  Plaintiff notes that, in August 2000, plaintiff was denied employment

because of high blood pressure – her reading during a subsequent visit to her physician was

160/120.  (Plaintiff's brief, p. 10; R. 292).[2]  Plaintiff argues:

> According to medical literature, most physicians probably would not limit
> exertion based on a resting BP reading of 160/100 or less.  Resting diastolic
> pressures generally over 110 or systolic pressures of over 180 could
> reasonably limit a RFC to medium work, and perhaps to light work.  It would
> be reasonable to limit a claimant with resting SBP's in the 190-200 mm Hg
> range to sedentary work, or resting DBP's in the 110-120 mm Hg range to the
> same RFC.

(Plaintiff's brief, p. 10).  However, plaintiff does not identify any restriction imposed by any

of her physicians as a result of her hypertension.  (Id.).  As noted above, plaintiff argues that

"[r]esting diastolic pressures generally over 110 or systolic pressures of over 180 could

reasonably limit a RFC to medium work . . . ."  The RFC determined by the ALJ and

incorporated in his hypothetical question to the vocational expert included a limitation to

medium work.  A review of the medical evidence of record indicates that, with limited

---

   [2]  The physician administered different medication and rechecked plaintiff's blood
pressure – after 40 minutes it was 140/90.  (R. 292).

exception, plaintiff's blood pressure readings included a diastolic pressure of 110 or less and a systolic pressure of 180 or less.  (See, *e.g.*, R. 254, 256, 270, 285, 291, 293, 294, 297, 298, 306, 313, 314, 316, 318, 321, 323, 410, 433, 437, 438).  Thus, the medical literature relied on by plaintiff supports the ALJ's RFC determination.

Other impairments.  Plaintiff argues that the ALJ failed to consider undisputed medical evidence confirming the existence of several other impairments, including obesity, cluster headaches, astigmatism, panic attacks, sinusitis, arthritis, allergic rhinitis, personality disorder, bilateral knee pain, and borderline to low average intelligence.  (Plaintiff's brief, p. 10).  None of these ailments were listed by the plaintiff in her application for benefits, nor did she testify that any of these impairments affected her ability to work. (See R. 32-39, 138, 151).[3]  Plaintiff was represented by counsel at the hearing before the ALJ.  The ALJ was not required to investigate a functional limitation that the plaintiff had not alleged.  See Streeter v. Barnhart, 133 Fed. Appx. 621(11th Cir. 2005)(unpublished opinion).  In Streeter, the Eleventh Circuit stated:

> The gravamen of Street's argument on appeal is that the ALJ should have, and failed to, consider undisputed evidence of Street's mental impairments and intellectual functioning.  However, Street did not list any mental impairment or intellectual functioning issues in his application for SSI benefits, nor did he

_____

[3]  With regard to plaintiff's obesity, there is no evidence plaintiff was not obese when she was engaging in her past relevant work or that her obesity has worsened significantly.  See R. 310 (weight of 224 pounds in January 2001, while plaintiff was employed performing private nurse's aide duties); compare R. 193 (weight of 207 pounds in November 1996) with R. 299 (weight of 208 pounds in August 2001).  Additionally, plaintiff does not allege any decrease in her level of intelligence or her visual acuity – which, in February 2002, was 20/30 in both eyes with correction.  See R. 307.

testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working. This failure alone could dispose of his claim, as it has been persuasively held that an "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996). Further more, this was not a case where the claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts surrounding Street's disability claim.

\* \* \* \* \*

The error Street assigns to the ALJ, in the form of a failure to consider Street's intellectual functioning, and, therefore, posing an inadequate hypothetical question to the VE, was error that Street could easily have corrected at the hearing by putting the ALJ on notice of the deficiency, if indeed one existed based on the record evidence. He failed to do that, and now seeks to have this Court reverse and remand despite the fact that, whatever the evidence of Street's alleged mental impairments or deficient intellectual functioning, that evidence existed at the time of the hearing. Thus, under the persuasive holding of Pena, we find that Street failed to present any evidence to the ALJ that would have put him on notice of a mental or intellectual limitation on Street's ability to function.

Id. at 627-28.

Additionally, the ALJ's failure to specifically cite the evidence relied on by plaintiff does not demonstrate that he failed to consider it. See Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343, 348 n. 11 (11th Cir. May 3, 2005)(unpublished opinion)("Although the ALJ did not specifically address how Hennes's obesity affected her subjective complaints of pain and, ultimately, her RFC, we recently have reiterated that 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical

condition as a whole.'''")(quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005)). It appears from the ALJ's decision that the ALJ properly considered all of the evidence and that he evaluated plaintiff's medical condition as a whole, considering all of her physical and mental infirmities to the extent they were supported by the record.[4]  <u>See</u> R. 18-19 (indicating a review of all of the medical evidence and specifically noting references to obesity, personality disorder, and allergic rhinitis).

Plaintiff's argument regarding the ALJ's failure to credit the opinions of treating and non-treating medical sources is based almost entirely on his failure to discuss the ailments identified above.   Plaintiff argues that the ALJ gave no reason for rejecting Dr. Chitwood's opinion that plaintiff could lift only twenty pounds occasionally.  <u>See</u> R. 466.  Contrary to plaintiff's argument, the ALJ discussed this limitation then noted that, in his letter, Dr. Chitwood stated that, "as far as any limitation went, the only thing that would limit the claimant was any strong grip activities but she would otherwise be able to function normally and be able to seek gainful employment that did not require strong grip or pinch motions with

---

[4]  Plaintiff's argument is factually inaccurate in significant respects.  There is no diagnosis of arthritis by an acceptable medical source.  Plaintiff cites pages 297-98 of the record.  The assessment of arthritis on p. 297 is signed only by a nurse practitioner and is not supported by any objective findings.  There is no reference to arthritis on p. 298 of the record.  <u>See</u> 29 C.F.R. § 404.1513.  The cited reference to "panic attack" is by plaintiff's self-report at a group counseling session, and is not a diagnosis.  (R. 399).  The evidence plaintiff cites regarding cluster headaches reflects a single emergency room visit occurring over fourteen months before the denial of plaintiff's previous application for disability benefits. (R. 245-52).  The evidence plaintiff cites in support of "bilateral knee pain," (R. 297, 306-09) demonstrates only that plaintiff complained during an examination that right knee pain prevented her from full forward bending or squatting.  There was no diagnosis rendered by the examining physician of any impairment in plaintiff's knee.  (R. 308-09).

her left hand." R. 18. Additionally, in the physical capacities evaluation including the twenty-pound limitation, Dr. Chitwood stated that restrictions were "based on lack of nerve recovery after [ulnar nerve transposition] surgery." (R. 465-66). The ALJ specifically noted the results of objective testing conducted by Dr. Bonnie Dungan two days after Dr. Chitwood completed the PCE; the testing indicated "resolution of the previous left ulnar nerve neuropathy with now normal latencies at below, across and above elbow and almost within normal conduction velocities." (R. 18; R. 464). The ALJ's rejection of the twenty-pound limitation in the physical capacities evaluation is supported by substantial evidence.[5]

Mechanics of treatment. As plaintiff argues, the RFC assessment "must be based on all of the relevant evidence in the case record," including limitations or restrictions imposed by the mechanics of treatment such as the frequency of treatment. SSR 96-8P. Plaintiff relies on an annotation in the individualized treatment plan signed by plaintiff's therapist at SpectraCare on August 20, 2002 that the projected frequency of treatment is "3 to 5 days" for "longer than one year." (Plaintiff's brief, pp. 10-11; R. 404). The record does not indicate whether this notation means that the therapist anticipated that plaintiff would require treatment three to five days per month or per week nor does it state the expected duration of the treatment on any of the "3 to 5 days." There are no records reflecting treatment or counseling at SpectraCare after the date on which this treatment plan was signed. See

---

[5] Contrary to plaintiff's argument (Plaintiff's brief, p. 13), the ALJ's RFC determination is consistent with the opinions of the non-examining agency physicians, both as to plaintiff's physical and mental limitations. See Exhibits 4F, 10F.

Exhibit 12F.  Plaintiff testified at the hearing that she attended AA meetings about three times a week and group meetings at SpectraCare every week or two.  (R. 31-32).  However, there is no evidence of record suggesting that the scheduling of AA or group meetings is inflexible, or that such meetings are scheduled so that they would interfere with plaintiff's ability to return to her past relevant work as a private sitter or nurse's aid.  The claimant bears the burden of showing that she is unable to perform her past relevant work.  See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991)(citing Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)); see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)("[The social security] regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work.").  Plaintiff has not carried her burden of demonstrating that her attendance at AA meetings and group counseling is such that it precludes her ability to perform her past relevant work on a regular and continuing basis.

New evidence.  Plaintiff argues that the Appeals Council erred by failing to remand her case to the ALJ on the basis of new evidence of surgery – right carpal tunnel release – performed on May 5, 2003.  (R. 496-524; AC Exhibit 2).

> 42 U.S.C. § 405(g) permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence. To succeed on a claim that remand is appropriate, [plaintiff] would have had to show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. See Cannon v. Bowen, 858 F.2d 1541 (11th Cir.1988); see also Keeton, 21 F.3d at 1067 (court may remand to Secretary if new evidence is material and good cause

exists for failure to incorporate the evidence in the record during proceedings
before the ALJ).

Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).  The Appeals Council considered the

new evidence submitted by plaintiff, but determined that the evidence did not provide a basis

for changing the ALJ's decision.  (R. 9).  Upon consideration of the new evidence, the court

concludes that it is not material – *i.e.*, there is no reasonable possibility that the evidence

would change the administrative result.  This evidence demonstrates that plaintiff had surgery

to correct carpal tunnel syndrome in her right arm.  The ALJ found that plaintiff suffered

from severe carpal tunnel syndrome (R. 17).  The ALJ specifically noted that an "EMG on

March 28, 2003, revealed right and left median sensory carpal tunnel syndrome at the wrist,

moderate to severe . . . ."  (R. 18).  There was evidence in the record before the ALJ that

evaluation and treatment of plaintiff's carpal tunnel syndrome was ongoing (R. 465).  As

discussed above, the ALJ's RFC determination included limitations imposed by her carpal

tunnel syndrome.  (R. 20).  Under these circumstances, the court cannot conclude that

evidence that plaintiff had a surgical procedure to correct the carpal tunnel syndrome in her

right arm would have any reasonable possibility of changing the ALJ's conclusion in this

case.[6]  Thus, the Appeals Council did not err and plaintiff is not entitled to remand on the

basis of new evidence.

---

[6] Plaintiff argues that this evidence "confirms Drayton's pain level on average is
between 6 and 7 on a scale of 1 to 10 with 1 being no pain and 10 being the worse [sic] pain."
(Plaintiff's brief, p. 14).  The evidence cited by plaintiff is an admission assessment based
on plaintiff's own report.  (R. 517).  In this same assessment, plaintiff responded that, using
the same scale, a pain level of 7 was acceptable for her, and her pain was satisfactorily
controlled.  (Id.).

**CONCLUSION**

Upon review of the record as a whole, and upon consideration of the arguments advanced by plaintiff, the court concludes that the decision of the Commissioner is supported by substantial evidence, reflects proper application of the law, and is due to be affirmed.  A separate judgment will be entered.

Done, this 27th day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE